IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARCO VINICIO PAREDES PADILLA,

                Petitioner,

v.                                                                                          OPINION and ORDER

ROBERT GALOVICH, SAMUEL OLSON,                                 25-cv-865-jdp
KRISTI NOEM, and PAMELA BONDI,

                Respondents.

---

Petitioner Marco Paredes Padilla is a citizen of Ecuador. He entered the United States without inspection in 2018 and was apprehended near the border by immigration officials. Paredes Padilla claimed a fear of returning to Ecuador and his case was referred to an immigration judge for asylum proceedings. He was released on bond and has been living in the United States without legal status ever since.

In September 2025, Paredes Padilla was arrested by Immigration and Customs Enforcement officers and issued a notice to appear for removal proceedings. He is being detained in ICE custody at the Douglas County jail in Superior, Wisconsin, while the removal proceedings continue. Paredes Padilla has applied for a writ of habeas corpus under 28 U.S.C. § 2241, contending that he has been unlawfully denied a bond hearing during the pendency of his removal proceedings.

An immigration judge denied Paredes Padilla a bond hearing on the basis that the Immigration and Nationality Act (INA) mandated his detention for the duration of his removal proceedings. Dkt. 10-8. Padilla contends that this determination was incorrect and that the INA entitles him to a bond hearing. The court concludes that the INA mandates Paredes Padilla's continued detention, so Paredes Padilla's petition will be denied.

BACKGROUND

The court draws the following facts from the petition and supporting documentation filed by the parties along with their briefs. These facts are undisputed.

Petitioner Marco Paredes Padilla is a citizen of Ecuador. He entered the United States without inspection in late 2018. Dkt. 10, ¶ 4. He was apprehended by immigration officials near the border and placed into expedited removal proceedings. *Id.* Paredes Padilla claimed fear of return to Ecuador, asserting that he feared persecution in Ecuador because he is a gay man. Immigration officials interviewed Paredes Padilla, found that he had a credible fear of return, and referred his case to an immigration judge for asylum proceedings. On February 14, 2019, Paredes Padilla was released from custody on payment of a $12,000 bond while those proceedings continued. *Id.* ¶ 6.

Over the next several years, Paredes Padilla's asylum case stalled. In 2019 and 2021, immigration judges twice granted him a change of venue. Dkt. 10-2 and Dkt. 10-3. In August 2021, an immigration judge ordered Paredes Padilla to file written pleadings within 30 days. Dkt. 10-1. That four-year-old order is the last action recorded in the case.

On September 4, 2025, ICE agents arrested Paredes Padilla at a construction site in Lakeville, Minnesota, pursuant to an arrest warrant issued by immigration officers. Dkt. 10-4. He was detained in ICE custody at the Douglas County jail and issued a notice to appear for removal proceedings. Dkt. 10-7. On September 18, an immigration judge denied Paredes Padilla bond during the pendency of his case, concluding that the INA mandated Paredes Padilla's detention and thus that the immigration judge lacked authority to consider his request for bond. Dkt. 10-8. Paredes Padilla filed this petition for a writ of habeas corpus, contending that immigration officials unlawfully denied him an opportunity to request bond.

ANALYSIS

Paredes Padilla requests a writ of habeas corpus under 28 U.S.C. § 2241, contending that he was denied a bond hearing in violation of the Immigration and Nationality Act (INA). A district court may grant a writ of habeas corpus if the petitioner shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas proceedings under § 2241 are an appropriate mechanism for immigrants in removal proceedings to challenge their ongoing detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

One preliminary matter. In a habeas action, the proper respondent is generally the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Paredes Padilla named Robert Galovich, the former Douglas County jail administrator, as well as three federal government officials responsible for immigration enforcement. Galovich filed a response contending both that he was not properly served and that he is not a proper respondent, but he also affirmed that "Douglas County remains prepared to accept any further direction from the federal government and will certain honor any orders of this Court." Dkt. 17. All the parties appear to agree that authority rests with the federal government respondents, who concede that they can offer Paredes Padilla a bond hearing if the court orders it. The court will dismiss Galovich as a respondent and the case will proceed against the government respondents only. *See Padilla*, 542 U.S. at 451–52 (Kennedy, J., concurring) (immediate custodian rule is waivable); *Moore v. Olson*, 368 F.3d 757, 758–60 (7th Cir. 2004) (issue of proper custodian is forfeited if not raised).

An immigration judge denied Paredes Padilla a bond hearing for two independent reasons. Dkt. 10-8. First, the immigration judge determined that Paredes Padilla was subject

3

to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he had not been lawfully admitted into the United States. The court has already determined that § 1225(b)(2)(A) does not apply to non-citizens who are already residing in the United States. Dkt. 18; *see also Paredes Padilla v. Galovich*, No. 25-cv-863-jdp, 2025 WL 3251446 (W.D. Wis. Nov. 21, 2025). So that was not a proper reason to deny Paredes Padilla a bond hearing.

Second, the immigration judge determined that Paredes Padilla was subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). That section of the INA concerns the inspection and expedited removal of certain new arrivals to the United States. Arriving aliens who are inadmissible due to lack of valid entry documentation or fraud may be removed from the United States on an expedited basis. *Id.* § 1225(b)(1)(A)(i). But if an alien otherwise eligible for expedited removal indicates an intention to apply for asylum, and an immigration officer finds that he has a credible fear of persecution if returned, then the alien is transferred from expedited into full removal proceedings so that his asylum claim can be adjudicated before an immigration judge. *Id.* 1225(b)(1)(B)(1). Aliens transferred from expedited to full proceedings under this statute "shall be detained for further consideration of the application for asylum." *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 301–03 (2018) (interpreting § 1225(b)(1)(B)(ii) to mandate detention until asylum proceedings are complete).

It is undisputed that in 2018, Paredes Padilla was processed for expedited removal due to lack of valid entry documentation and then transferred into asylum proceedings. The parties appear to assume that at the time of his transfer into asylum proceedings, Paredes Padilla was subject to mandatory detention under § 1225(b)(1)(B)(ii). But Paredes Padilla contends that § 1225(b)(1)(B)(ii) no longer mandates his detention, for three reasons: (1) he was no longer in expedited removal proceedings when he was arrested in September 2025; (2) he had

4

previously been granted bond, so he was entitled to an individualized determination before the bond could be revoked; and (3) he was arrested pursuant to a warrant under § 1226 of the INA, not § 1225.[1]

Paredes Padilla's first reason is foreclosed by *Jennings*, which holds that once a non-citizen is transferred from expedited to full removal proceedings for consideration of an asylum claim, § 1225(b)(1)(B)(ii) mandates detention for the entire duration of the asylum proceedings. 583 U.S. at 302. Paredes Padilla was transferred from expedited to full proceedings in 2018 so that his asylum claim could be adjudicated. The asylum case stalled in 2021, but nothing in the record suggests that the case was ever concluded. So Paredes Padilla should have been subject to mandatory detention from his initial arrest in 2018 through the present. The fact that Paredes Padilla was no longer in expedited removal proceedings when he was re-arrested in September 2025 doesn't change that his detention has been, and remains, mandatory.[2]

---

[1] Some courts have suggested that the INA's mandatory detention scheme violates the Fifth Amendment Due Process Clause because it authorizes indefinite detention for civil immigration offenses. *See Jennings*, 583 U.S. at 313–14 (declining to address the issue); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163 (W.D. Wash. 2023) (denying motion to dismiss due process claim). But all of Paredes Padilla's arguments against his detention are based in the statute itself. He did include a claim for relief under the Due Process Clause in his petition and a parenthetical citation in his reply brief that refers to non-citizens having due process rights. Dkt. 20, at 2 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). But these references to the Due Process Clause are fleeting and the court does not take Paredes Padilla to be contending that his detention, if authorized by the INA, is unconstitutional. If that is his argument, he has not developed it, so it is forfeited. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in forfeiture).

[2] The statutory scheme does provide some opportunity for relief from mandatory detention. The Attorney General may discretionarily parole asylum claimants and other mandatory detainees "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

That brings the court to Paredes Padilla's second reason, which is that in February 2019, he was released on a $12,000 bond. Neither party directly explains why that happened, when it appears that § 1225(b)(1)(B)(ii) mandates detention for non-citizens in his position. But the timing of Paredes Padilla's original release on bond suggests an answer. When Paredes Padilla was released in February 2019, binding administrative authority held that § 1225(b)(1)(B)(ii) mandates detention only for aliens arriving at the border or a port of entry, not for aliens apprehended within the United States and subsequently delegated for expedited removal. *Matter of X-K-*, 23 I&N Dec. 731, 736 (BIA 2005). Paredes Padilla was presumably released under that interpretation of the statute. But two months later, in April 2019, the Board of Immigration Appeals overruled *Matter of X-K-*, holding that § 1225(b)(1)(B)(ii) mandates detention for all aliens transferred from expedited removal into asylum proceedings regardless of where they were apprehended. *Matter of M-S-*, 27 I&N Dec. 509 (BIA 2019). Neither party contends that *Matter of M-S-* was wrongly decided, so it appears that Paredes Padilla's original release was the result of what is now recognized as an erroneous interpretation of § 1225(b)(1)(B)(ii).

Nevertheless, Paredes Padilla asserts that because he was previously released on bond, his bond cannot be revoked without an individualized hearing and a finding of changed factual circumstances. Paredes Padilla relies on *Matter of Sugay*, 17 I&N Dec. 637 (BIA 1981), for the proposition that "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance." *Id.* at 640. Essentially, Paredes Padilla's position is that *Sugay* imposes a specific process requirement—an individualized hearing—any time an immigration official wants to revoke bond.

6

*Sugay* does not support Paredes Padilla's position. *Sugay* did not concern the process that non-citizens are entitled to under the INA before bond can be revoked; in fact, *Sugay* did not even involve the INA. Rather, *Sugay* concerned the authority of immigration officials under an immigration regulation, 8 C.F.R. § 242.2(e), to revoke a bond determination previously made by an immigration judge. *Id.* at 639–40. *Sugay* assumed that the initial bond determination was legal under the INA. Nothing in *Sugay* says that a change of circumstance is required for an immigration judge to revoke a bond determination that the INA never authorized in the first place.

That leaves Paredes Padilla's third reason. He argues that he is entitled to a bond hearing because he was arrested in September 2025 under § 1226 of the INA, not § 1225. Section 1226 authorizes the arrest and detention of an alien for removal proceedings "[o]n a warrant issued by the Attorney General" and it allows for release on bond during the pendency of the removal proceedings. 8 U.S.C. § 1226(a). Paredes Padilla says that his arrest warrant refers to § 1226 as the statutory authority for the arrest, so his detention should be governed by § 1226, not § 1225. *See* Dkt. 10-4 (arrest warrant).

The court is not persuaded that the arrest warrant matters to the issue whether Paredes Padilla is subject to mandatory detention. As this court has previously observed, § 1226 refers to a warrant requirement because warrants are usually required to arrest individuals already residing in the United States, and § 1226 generally applies to individuals already residing in the United States. *Paredes Padilla*, 2025 WL 3251446, at *3 (citing 8 U.S.C. § 1357). But whether a non-citizen was arrested pursuant to a warrant is not an element in determining whether a non-citizen's detention is governed by § 1225 or § 1226. If it were, that would undermine the mandatory detention scheme imposed by § 1225, because immigration officials

7

could avoid the mandatory detention requirement by simply issuing a warrant before arresting someone who would otherwise be subject to mandatory detention. Section 1225(b)(1)(B)(ii) mandates detention for all non-citizens transferred from expedited removal proceedings into asylum proceedings; it makes no distinction between individuals arrested with or without warrants. *See Jennings*, 583 U.S. at 302; *Matter of M-S-*, 27 I&N Dec. 509 (BIA 2019).

Paredes Padilla points to several recent cases in which district courts have ordered bond hearings for individuals under circumstances similar to his own. *dos Santos v. Noem*, No. 1:25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *De Andrade v. Moniz*, No. 25-cv-12455, 2025 WL 2841844 (D. Mass. Oct. 7, 2025); *Loja v. FCI Berlin Warden*, No. 1:25-cv-386, 2025 WL 3079160 (D.N.H. Nov. 4, 2025); *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025). These decisions are unpersuasive. *Dos Santos* relied on *Sugay*, which is not instructive for the reasons explained above. In each of the other decisions, the court reasoned that the government's decision to release a non-citizen into the United States meant that the non-citizen was no longer an arriving alien, and so § 1226 would govern their detention, not § 1225. *E.g.*, *de Andrade*, 2025 WL 2841844, at *5; *Loja*, 2025 WL 3079160, at *2; *cf. Paredes Padilla*, 2025 WL 3251446, at *3–*4 (INA's statutory scheme suggests that § 1225 was intended to apply to arriving aliens, and § 1226 was intended to apply to aliens already in the United States). But that reasoning doesn't square with *Jennings*, which holds that once § 1225(b)(1) applies, it mandates detention until removal proceedings are complete. 583 U.S. at 302. That means that the government's decision to release wouldn't change a person's status as long as the original removal proceedings are still pending.

In sum, the parties agree that Paredes Padilla was apprehended in 2018 near the border, placed into expedited removal proceedings and then transferred into asylum proceedings. Under § 1225(b)(1)(B)(ii), he should have been detained at that time without bond, but the government apparently didn't comply with the requirement to detain him. Nevertheless, his removal proceedings were never completed, so § 1225(b)(1)(B)(ii) still mandates his detention. Paredes Padilla's detention is not unlawful under the INA, so his petition for a writ of habeas corpus will be denied.

ORDER

IT IS ORDERED that

1. Respondent Robert Galovich is DISMISSED.

2. Petitioner Marco Vinicio Paredes Padilla's petition for a writ of habeas corpus, Dkt. 1, is DENIED. The clerk of court is directed to enter judgment in favor of the federal government respondents and close this case.

Entered December 15, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge